| | |
|---|---|
| MILLIKEN & COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )     **ORDER** |
| CNA HOLDINGS, INC. and CELANESE | ) |
| AMERICAS CORPORATION, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss Plaintiff's First

Amended Complaint and Strike Certain Allegations in Plaintiff's Amended Complaint (Doc.

#36) filed May 12, 2009; Plaintiff's Memorandum in Opposition to Defendants' Motion to

Dismiss Plaintiff's First Amended Complaint (Doc. #41) filed June 5, 2009; and Defendants'

Reply to Plaintiff's Memorandum (Doc. #44) filed June 26, 2009. This matter is now ripe for

disposition.

## I. INTRODUCTION

The following facts are taken from Plaintiff's Complaint and are deemed to be true for

purposes of this motion. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). This action

alleges a conspiracy among manufacturers of polyester staple fiber ("PSF"), a raw material for

yarns and many textile products, to fix prices and allocate customers in the United States from

late 1994/early 1995 through January 2001. Am. Compl. ¶ 1; 28-29.

Plaintiff Milliken & Company ("Milliken") is a company that manufactures various

textile products and purchases PSF directly from Defendants. Am. Compl. ¶ 7. Defendant CNA

Holdings, Inc., f/k/a Hoechst Celanese Corporation ("Hoechst Celanese") sold PSF from its

facilities in North Carolina and South Carolina from before 1995 until 1998. Am. Compl. ¶ 8.

Defendant Celanese Americas Corporation, f/k/a Hoechst Corporation ("Hoechst Corporation")

is a holding company that is the sole shareholder of Hoechst Celanese since 1987. Am. Compl. ¶

9. The other members of the alleged conspiracy–all leading suppliers of PSF in the United

States–are Wellman, Dupont/DAK, and Nan Ya. Am. Compl. ¶ 28.

In the mid-1990s, the price of PSF declined as a result of lessening demand and

increasing supply in the market. Am. Compl. ¶¶ 35-38. To combat the steady decrease in price,

Defendants along with the leading PSF suppliers in the United States–Wellman; DuPont/DAK;

and Nan Ya–entered into a conspiracy to fix prices and allocate customers. Am. Compl. ¶ 28.

The conspiracy continued even after Defendants sold most, but not all, of their PSF business to

KoSa. Am. Compl. ¶ 48. Throughout the entire conspiracy period, these conspirators agreed to

allocate customers to prevent or limit price competition among themselves in the sale of PSF.

Am. Compl. ¶ 28. These conspirators also agreed during this time to coordinate price increases

in the market, including coordination of their price announcements in April 1995, June 1997,

October 1999, and January 2000. Am. Compl. ¶¶28; 39-42; 46. Thus, Plaintiff alleges a

conspiracy that took place between "late 1994 or early 1995 and continued until approximately

January 2001." Am. Compl. ¶ 2.

Defendants and their co-conspirators allegedly carried out their conspiracy through direct

conversations with each other. One such conversation took place in the fall of 1994 or early 1995

during a trip to a hunting club in Georgia that was organized by a PSF broker. Am. Compl. ¶ 45.

During the trip, Troy Stanley, an employee of Defendants reached an agreement with David

Whitley, an employee of Wellman. Am. Compl. ¶ 45. The gravamen of the agreement was that

Defendants would not undercut Wellman's price quote for PSF to Milliken and that Defendants

would not increase the volume of their PSF sales to Milliken. Am. Compl. ¶ 45. Stanley allegedly had a similar conversation with Brad Dutton of Nan Ya concerning the pricing of PSF for Johnson & Johnson and the way in which this pricing might impact prices for Milliken. Am. Compl. ¶ 48. In support of its conspiracy claim, Plaintiff names specific employees of Defendants involved in the conspiracy–Troy Stanley, Tom Nixon, and Grover Smith. Am. Compl. ¶ 14. Plaintiff also names employees of the other entities involved in the alleged conspiracy: David Whitley, an employee of Wellman; two employees of DAK–Jim Netzel and Sonny Walker; and two employees of Nan Ya–Brad Dutton and David Lin. Am. Compl. ¶¶ 44, 48. These conspirators also used PSF brokers, such as David Poole, for the purpose of facilitating their conspiracy, relying on such brokers as conduits to share information in furtherance of the conspiracy. Am. Compl. ¶ 45.

In sum, Plaintiff's Complaint identifies the following information about the alleged conspiracy: (1) the parties involved in the conspiracy, (2) the names of several employees of each of the conspirators who participated in the conspiracy, (3) the product involved in the conspiracy, (4) the geographic market impacted by the conspiracy, (5) the approximate time period of the conspiracy, (6) the specific ways that the Defendants and their partners-in-crime implemented their conspiracy, and (7) the victims of the conspiracy. Additionally, Plaintiff's Complaint describes with some detail one of the meetings between the conspirators.

## II. LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausbility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (May 18, 2009). While mere labels and legal conclusions are insufficient to state a claim, on a motion to dismiss the Court "must accept as true all well-pleaded allegations and view the complaint in the light most favorable to [the plaintiff]." *Hatfill v. New York Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005).

The Supreme Court explained in *Twombly* that "heightened fact pleading of specifics" is not required to state an antitrust conspiracy claim. *Twombly*, 550 U.S. at 570. Indeed, "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement" *Id.* at 556.[1] *See also In re Air Cargo Shipping Servs. Antitrust Litig.*, No. MD 06-1775 (JG) (VVP), 2008 WL 5958061, *8 (E.D.N.Y. Sept. 26, 2008) (holding that "plaintiffs are not required to plead every detail of every meeting or every communication, secret or otherwise, that took place between the defendants, nor must they allege in great detail each defendant's role in the conspiracy"); *In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253419, *5 (E.D. Pa. Aug. 3, 2007) ("*Twombly* does not . . . require Plaintiff's to prove their allegations before taking discovery."). Thus, to satisfy the standard

---

[1] Two weeks after issuing *Twombly*, in *Erickson v. Pardus*, 551 U.S. 89 (2007), the Supreme Court clarified that *Twombly* did not signal a switch to fact-pleading in the federal courts. Rather, *Erickson* reaffirmed that under Rule 8 "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955); *see also Airborne Beepers & Video, Inc. v. AT&T Mobility, LLC*, 499 F.3d 663, 667-68 (7th Cir. 2007) ("Taking *Erickson* and *Twombly* together, we understand the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.").

articulated in *Twombly*, a plaintiff need only "nudge [its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### III. ANALYSIS

Plaintiff claims that Defendants have violated Section 1 of the Sherman Act, which prohibits "any contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. Specifically, Plaintiffs contend that Defendants and other manufacturers of PSF conspired to eliminate competition among themselves by allocating customers and agreeing to fix, maintain, stabilize or raise prices of PSF in the United States.

As evidence of the unlawful conspiracy, Plaintiff's Amended Complaint contains the following allegations: identifies the parties involved in the conspiracy, identifies by name several employees of each of the conspirators who participated in the conspiracy, identifies the product involved in the conspiracy, identifies the geographic market impacted by the conspiracy, identifies the approximate time period of the conspiracy, identifies the specific ways that the Defendants and the other involved entities implemented their conspiracy, identifies the victims of the conspiracy and describes with some detail one of the meetings between the co-conspirators. Additionally, Plaintiff's Complaint places the alleged conspiracy in context by: (1) referencing Defendants' involvement in *In re Polyester Staple Antitrust Litigation,* MDL No. 3:03-cv-1516, ("MDL 1516") a multi-district litigation previously before this Court; (2) incorporating the opposition to Defendants Summary Judgment Motion in MDL 1516; (3) describing fraud allegations in another suit against Defendants in connection with Hoechst's 1998 sale of its PSF business to KoSa; (4) mentioning DuPont's participation in the Department of Justice Corporate Leniency program; and (5) referencing guilty pleas entered by parties to the alleged conspiracy.

Defendants respond by arguing that Plaintiff's Amended Complaint is devoid of the requisite specific factual allegations for a four-party conspiracy between Celanese, Wellman, the DAK Entities[2] ("DuPont") and the Nan Ya Entities[3] ("Nan Ya"). Defendants maintain that the Amended Complaint alleges in conclusory fashion that Celanese was part of a broad price-fixing conspiracy but fails to identify the "who, did what, to who [sic] (or with whom), where and when." More specifically, Defendants argue that the Complaint is devoid of facts alleging that Celanese and DuPont–or Celanese and Nan Ya–conspired to fix prices, rig bids or allocate customers.

Defendants further argue that the allegedly illegal conduct is equally consistent with lawful activity and that the contextual evidence outside the factual allegations of the Amended Complaint is not sufficient, in and of itself, to suggest Defendants' participation in any conspiracy. Defendants maintain that the parallel conduct alleged is devoid of any "plus factors," *i.e.*, facts that would distinguish independent conduct from anti-competitive measures.

Finally, Defendants take issue with the inclusion of allegations in the Amended Complaint concerning the opposition brief submitted by non-class plaintiffs in MDL 1516. Defendants contend that Plaintiff improperly draws speculative inferences from both the opposition and the denial. Defendants maintain that those allegations should also be stricken,

---

[2] "DAK Entities," as defined by Milliken in its Amended Complaint, includes E.I. DuPont de Nemours & Co., DAK Fibers, LLC, and DAK Americas, LLC. Am. Compl. at ¶15(a).

[3] "Nan Ya Entities," as defined by Milliken in its Amended Complaint, includes Nan Ya Plastics Corporation, American and Nan Ya Plastics Corporation, America, South Carolina. Am. Compl. at ¶ 16.

pursuant to Fed. R. Civ. P. 12(f) and the Protective Order[4] in MDL 1516, because the non-class

plaintiffs' opposition to Celanese's motion for summary judgment is immaterial and contains

inadmissible hearsay. Defendants also maintain that the Court's denial of Celanese's motion for

summary judgment in the MDL is not relevant in this action, arguing that any reference in the

presence of the jury to Celanese's motion for summary judgment, including the non-class

plaintiffs' opposition or the Court's ruling, would be unfairly prejudicial to Celanese and

confuse the issues in this action.

The Court will address each of Defendants' contentions in turn.

## A. Sufficiency of the Conspiracy Allegations

The Sherman Act, section 1, provides in part that, "[e]very contract, combination in the

form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several

States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. A careful review of

*Twombly* provides this Court with further instruction on exactly what a plaintiff must plead in

order to establish a plausible conspiracy claim. The Supreme Court, in *Twombly,* rejected a

complaint that attempted to plead an antitrust conspiracy in violation of the Sherman Act based

primarily on the defendant "Baby Bell" telephone companies' parallel behavior, consisting of

steps to keep out competing start-up telephone competitors. Unlike Plaintiff in the instant case,

the *Twombly* plaintiffs did not plead any facts to support an actual agreement among the

defendants. "[T]he pleadings mentioned no specific time, place or person involved in the alleged

conspiracies . . . [and] proceed[ed] exclusively via allegations of parallel conduct." *Twombly*,

550 U.S. at 565, nn. 10-11. Essentially, the plaintiffs' complaint provided nothing more than

---

[4] *See* Third Amended Protective Order dated September 9, 2008, in MDL 1516.

allegations of parallel conduct, which were equally consistent with lawful behavior. The Court concluded that, despite the liberal notice pleading requirements of Fed. R. Civ. P. 8(a), this was not enough to plead a Sherman Act violation. Indeed, the Court noted that "[n]othing contained in the complaint suggests either the action or the inaction alleged with a plausible suggestion of conspiracy" as required by Rule 8. *Id.* at 566. "Without more, parallel conduct does not suggest conspiracy, and conclusory allegations of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* at 556-57. Despite the lack of factual allegations, the Court acknowledged that the complaint came "close to stating a claim, but without some further factual enhancement it stopped short of the line between possibility and plausibility of entitle[ment] to relief.'" *Id.* at 557.

*Twombly* provided this court, and other district courts, with instruction on the level a factual specificity a plaintiff must allege in its complaint in order to plead a Section 1 claim. First and foremost, a section 1 claim "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." 550 U.S. at 556. That is, there must be sufficient fact presented "to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* Despite the plausibility standard announced in *Twombly* and the emphasis on pleading factual matter, the Supreme Court made clear that it was not going so far as to call for a fact-pleading standard:

> Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those fact is improbable, and "that a recovery is very remote and unlikely."

*Id.* (footnote and citations omitted). In the current case, unlike *Twombly*, this Court

concludes Plaintiff has alleged something more than bare allegations of parallel conduct and a recitation of the elements. For instance, Plaintiff alleges an actual agreement initiated by specific persons. Further, Plaintiff identifies specific persons involved in the conspiracy and provides an approximate time period for the alleged conspiracy. Although the series of alleged price fixing arrangements among defendants was followed by parallel rises in prices, the complaint does not rely on the alleged parallel conduct alone to imply a conspiracy. Instead, Plaintiff supports its Section 1 claim by pleading factual allegations, identifying parallel conduct, and placing the conduct in the larger context of circumstances making the occurrence of a conspiracy more likely. As such, Plaintiff has sufficiently stated a claim for a conspiracy between Defendants and the other PSF providers alleged to have taken part in the conspiracy.

Despite such specificity, Defendants attack the allegations in Plaintiff's Complaint as lacking the "who, what, when and where," of the alleged conspiracy as purportedly required by *Twombly*.[5] Defendants attack is misplaced, as *Twombly* does not require such specificity.

---

[5] This Court finds that *Twombly* imposes no such requirement. The "time, place or person" language in *Twombly* appears in dicta, in a footnote, in the context of the Court's comment that, but for the complaint's allegations of parallel conduct, references to an agreement among the ILECs might not have given the notice required by Rule 8 because the complaint did not give the "specific time, place or person" involved in the alleged conspiracy. 550 U.S. at 564 n. 10. The Supreme Court noted that if parallel conduct among all the ILECs had not been generally alleged, there would have been "no clue as to which of the four ILECs (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place." *Id.* In such an instance, the Court hypothesized, "a defendant seeking to respond to plaintiffs' conclusory allegations in the § 1 context would have little idea where to begin." *Id.* In fact, the Court in *Twombly* expressly stated that it did "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. Stated differently, the Court's "concern [was] not that the allegations in the complaint were insufficiently 'particular[ized];' rather, the complaint warranted dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." *Id.* at 569 n. 14 (internal citation omitted) (emphasis in original). *See also In re Packaged Ice Antitrust Litigation*, 723 F. Supp. 2d 987, 1005 (E.D. Mich. 2010).

Plaintiff has offered sufficient factual content to "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Even if ultimate proof of the facts may seem improbable to a "savvy judge," *Twombly* did not purport to place on a plaintiff alleging an antitrust conspiracy claim a summary judgment standard at the pleading stage. *See In re Flat Panel Antitrust Litig.*, 599 F. Supp. 2d 1179, 1184 (N.D. Cal. 2009) ("Contrary to defendants' suggestion, neither *Twombly* nor the Court's prior order requires elaborate fact pleading.").

Indeed, other courts have held that even when a Plaintiff does not answer all of the specific questions about "who, what, when and where," a Plaintiff can still survive a motion to dismiss. *See In re Se. Milk Antitrust Litig.*, 555 F. Supp. 2d 934, 942 (E.D. Tenn. 2008) ("These complaints, while not answering all specific questions about 'who, what, when and where,' do put defendants on notice concerning the basic nature of their complaints against the defendants and the grounds upon which their claims exist."); *see also Starr v. Sony BMG Music Entertainment*, 592 F.3d 314, 325 (2d Cir. 2010) (rejecting defendants' argument that *Twombly* imposed an obligation to identify specifics regarding the time, place, and person as to each allegation of conspiracy); *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1024 (N.D. Cal. 2007) (confirming that plaintiffs need not plead "specific back-room meetings between specific actors at which specific decisions were made"). Instead, Plaintiff needs simply to plead sufficient factual allegations that make its claim plausible on its face, a standard that Plaintiff has met in the instant case.

Defendants cite to two cases in support of their contention that Plaintiff's Complaint should be dismissed because it does nothing more than allege unidentified meetings at

unspecified times. More specifically, Defendants argue that the allegations in the Amended

Complaint are virtually identical to those of the plaintiffs in *In re Elevator Antitrust Litigation*,

502 F.3d 47 (2d Cir. 2007) and the *Air Cargo Antitrust Litigation*, MDL No. 1775, 2009 WL

3443405 (E.D.N.Y. Aug. 21, 2009) .

This Court finds these cases distinguishable in that neither case involved the level of

factual content proffered in this case. For instance, in *Elevator Antitrust Litigation*, the Second

Circuit affirmed dismissal of plaintiffs' price-fixing antitrust claims that defendants conspired in

violation of Section 1 by "participating in meetings to discuss pricing and market division,

agreeing to fix prices, rig bids, allocate markets, and exchange price quotes." *Elevator Antitrust

Litigation*, 502 F.3d at 51. Applying *Twombly*, the Second Circuit held that plaintiffs'

"conclusory allegations of an agreement at some unidentified point do not supply facts adequate

to show illegality." *Id.* The Second Circuit affirmed the district court's decision to grant

defendants' motion to dismiss because the plaintiffs' allegations were "in entirely general terms

without any specification of any particular activities by any particular defendant; it is nothing

more than a list of theoretical possibilities, which one could postulate without knowing any facts

whatever." *Id.* (quotations omitted).

Similarly, in *Air Cargo Antitrust Litigation*, a district court dismissed plaintiffs' price-

fixing antitrust claims where the plaintiffs alleged that there were "meetings, secret meetings,

communications, or secret meetings and communications . . . [where the defendants agreed to]

implement a war risk surcharge . . . charge customers flat fees . . . [for each] manifest . . . [and]

raise and fix airfreight shipping costs," because all the allegations were in "entirely general

terms" which "one could postulate without knowing any facts whatsoever." 2008 U.S. Dist.

LEXIS *77-79, 81-82. The district court further held that "the complaint fails to tie each

defendant into the conspiracy with something other than bare parallel conduct." *Id.* at 83.[6]

This Court finds that Plaintiff's Complaint, viewed in the light most favorable to Plaintiff, alleges more than what was alleged in *In re Elevator Antitrust Litigation* and the *Air Cargo Antitrust Litigation* complaints. Unlike the complaints *Elevator Antitrust Litigation* and *Air Cargo Antitrust Litigation*, the complaint in the current case is composed of more than conclusory allegations or theoretical possibilities. While not pleading every factual detail of the alleged conspiracy, the Complaint in the instant case identifies parties to the conspiracy and describes a specific meeting where parties to the conspiracy agreed to fix prices. Also unlike the complaint in *Air Cargo Antitrust Litigation*, Plaintiff's Complaint pleads allegations that require more than knowledge of the elements of a conspiracy claim. As such, Plaintiffs Complaint pleads a plausible claim and gives Defendants reasonable notice of the allegations against them.

**B. Plaintiff's Complaint alleges more than parallel conduct.**

Defendants next contend that Milliken's bare allegations in the Amended Complaint are legally insufficient to state a Section 1 claim of parallel conduct (also known as "follow-the-leader" pricing) in the PSF industry. Defendants maintain that "[i]n the wake of *Twombly*,

---

[6] Defendants argue that to properly plead a violation of Section 1, Milliken must set forth specific allegations in its complaint as to each alleged conspirator whose conduct it claims was unlawful. *See Elevator Antitrust Litig.*, 502 F.3d at 50-51 (general allegations of activities "without any specification of any particular activities by any particular defendant ... do not supply facts adequate to show illegality"); *Michigan Div.-Monument Build. Of N.A. v. Michigan Cemetery Assoc.*, 458 F. Supp. 2d 474, 485 (E.D. Mich. 2006), *aff'd*, 524 F.3d 726, 729 (6th Cir. 2008) ("Plaintiffs cannot escape their burden of alleging that each defendant participated in or agreed to join the conspiracy by using the term 'defendants' to apply to numerous parties without any specific allegations as to any individual defendant."). This Court disagrees with Defendants' assessment of the factual specificity alleged in Plaintiff's Complaint. The factual allegations pleaded in Plaintiff's Complaint, combined with the context in which the conspiracy is alleged to have occurred, is sufficient at this stage of the litigation to survive a motion to dismiss.

allegations of parallel conduct and bare assertions of conspiracy no longer supply an adequate foundation to support a plausible § 1 claim." *In re Travel Agent Commission Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009). In reviewing a claim under Section 1, the "crucial question" is whether the challenged anti-competitive conduct "stem[s] from independent decision or from an agreement, tacit or express." *Twombly*, 550 U.S. at 553 (citing *Theatre Enterprises, Inc. v. Paramount Film Distributing Corp.*, 346 U.S. 537, 540 (1954)).

When a complaint alleges parallel conduct as a basis for relief under Section 1, "it must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly*, 550 U.S. at 557. An allegation of parallel conduct–as with a naked allegation of conspiracy "without some further factual enhancement . . . stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999). In other words, "lawful parallel conduct fails to bespeak unlawful agreement." *Id.* The complaint must allege something more than "merely parallel conduct that could just as well be independent action," such as "additional facts that tend to exclude independent self-interested conduct as an explanation for defendants' parallel behavior." *Id.* at 1964, 1966 (internal quotation marks omitted).

If, as Defendants allege, this were a case of parallel conduct and bare assertions of conspiracy, then Defendants would be correct to assert that Plaintiff's Complaint would not have supplied an adequate foundation to support a plausible § 1 claim. *See In re Travel Agent Commission Antitrust Litig.*, 583 F.3d 896 (6th Cir. 2009). Plaintiff's Complaint, however, alleges more than simple parallel conduct. In the current case, viewing the Amended Complaint in its entirety, there is sufficient factual content alleged to put Plaintiff's allegations in a context

indicative of a plausible conspiracy. As stated above, Plaintiff's Amended Complaint contains the following allegations: identifies the parties involved in the conspiracy, identifies by name several employees of each of the conspirators who participated in the conspiracy, identifies the product involved in the conspiracy, identifies the geographic market impacted by the conspiracy, identifies the approximate time period of the conspiracy, identifies the specific ways that the Defendants and their partners-in-crime implemented their conspiracy, identifies the victims of the conspiracy and describes with some detail one of the meetings between the co-conspirators. Additionally, Plaintiff's complaint includes specific factual allegations that go beyond the requirement of *Twombly* and do answer the who, where and when:

> For example, in the fall of 1994 or early 1995, Stanley and Whitley reached agreements regarding the pricing and volume of PSF that Hoechst Celanese and Wellmen were quoting to Milliken. Stanley also agreed with Whitley that Hoechst Celanese would not undercut Wellman's quoted price to Milliken and that Defendants would not increase the volume of their PSF sales to Milliken. Upon information and belief, the first communication between Stanley and Whitley that related to Milliken occurred in the fall of 1994 or early 1995 at a hunting club in Georgia in connection with a gathering that was organized by a PSF broker, David Poole.

Am. Compl. ¶ 45. Plaintiff's Complaint further demonstrates the continuing nature of the conspiracy, as Milliken alleges that Stanley also reached an agreement with a Nan Ya employee, Brad Dutton, regarding pricing for Johnson & Johnson, and that "[i]n reaching this agreement, Stanley and Dutton discussed Stanley's concern that if Nan Ya's quoted price to Johnson & Johnson was too low it would impact the market price for PSF and result in Stanley having to lower the price he had quoted to Milliken." Am. Compl. ¶ 48.  Indeed, other district courts have held that similar explicit allegations to fix prices and references to particular meetings is enough to raise a right to relief above the speculative level. *See In re OSB Antitrust Litig.*, 2007 WL

2253419, at *5; *see also In re Se. Milk Antitrust Litig.*, 555 F. Supp. 2d 934, 944 (E.D. Tenn. 2008) (holding that where plaintiffs allege that actual agreements exist, along with allegations of certain parallel behavior, the complaints "plead sufficient facts to comply with Fed. R. Civ. P. 8(a)(2) and the United States Supreme Court's recent pronouncement in *Twombly*.").

A review of the cases cited by Defendants show that Plaintiff's Complaint alleges more than what is required to survive a motion to dismiss. First, in *In re Late Fees and Over-Limit Fee Litigation*, 528 F. Supp. 2d 953, 961-62 (N.D. Cal. 2007), the Northern District of California dismissed the plaintiffs' claims because they alleged partially parallel behavior and the opportunity for the defendants to conspire, but did not allege any facts relating to an actual agreement among the defendants. Second, and similarly, in *In re Travel Agent Commission Antitrust Litigation*, No. 1:03-cv-30000, 2007 WL 3171675, *8-9, 12 (N.D. Ohio Oct. 29, 2007), the only relevant allegations were that the defendants engaged in parallel conduct and had the opportunity to conspire. Accordingly, the Northern District of Ohio held that the plaintiffs failed to meet *Twombly*'s pleading requirements. Third, and finally, in *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008), the Ninth Circuit affirmed dismissal of the plaintiffs' claims because the complaint "failed to plead any evidentiary facts beyond parallel conduct." The cases cited by Defendants share a common defect: the plaintiff alleges nothing more than parallel conduct and an opportunity to conspire. In the instant case, this defect is cured by the level of factual allegations pleaded in the Complaint. The allegations of parallel conduct, combined with specific and sufficient factual allegations regarding the alleged agreements, make out a plausible claim for a Section 1 violation.

In their reply brief, Defendants cite to *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538 (M.D. Pa. 2009), as an example that demonstrates the factual allegations

necessary to state an antitrust conspiracy claim in cases involving allegations of parallel conduct. In *Chocolate Confectionary*, the plaintiffs alleged parallel price increases and also alleged specific facts concerning a number of incriminating communications among the alleged co-conspirators that substantively and temporally suggested that the price increases were more than independent parallel conduct. *Id.* at 555 (defendants' synchronized price increases were immediately preceded by communications between each other regarding product pricing). The district court held that the detailed factual allegations regarding communications among the purported co-conspirators were sufficient to nudge the plaintiffs' from conceivable to plausible and denied the defendants' motion to dismiss. *Id.* at 555-57. Importantly, however, nothing in *Chocolate Confectionary* states that such detailed allegations are a minimum requirement for what a plaintiff must plead in order to make out a plausible claim. To the extent that Plaintiff's Complaint pleads less than what was pleaded in *Chocolate Confectionary*, Plaintiff still meets its burden of sufficiently pleading a claim under the standard articulated in *Twombly* and *Iqbal*. As such, this Court finds that Plaintiff has alleged more than parallel conduct and that Plaintiff has pleaded sufficient factual allegations to survive Defendants' Motion to Dismiss.

**C. The facts as alleged, combined with Plaintiff's references to other matters involving the members of the alleged conspiracy, raise a reasonable expectation that discovery will reveal evidence of illegal agreement**

Defendants next argue that Milliken cannot satisfy *Twombly's* pleading requirements in connection with its claims against Celanese based upon reference to: (1) the guilty pleas of non-parties Arteva and Troy Stanley, (b) the purported "admission" by DuPont by seeking entry into the Corporate Leniency Program of the United States Department of Justice ("DOJ"), (c) KoSa's allegations in a separate civil action for fraud concerning the sale of Celanese's PSF business, or (d) sealed summary judgment filings from MDL 1516. Defendants maintain that the

Kosa/Stanley guilty pleas and the DuPont "admission" are completely inconsistent with Milliken's allegation that Celanese was a member of any four-party conspiracy. Additionally, Defendants argue that the sealed summary judgment filings are insufficient to satisfy the *Twombly* pleading standard. To be sure, these allegations standing alone probably would not establish a plausible suggestion of conspiracy. However, when examined in light of the factual allegations of Plaintiff's Complaint, these contextual references provide further support for Plaintiff's contention that it has nudged its claim across the line from conceivable to plausible.

In their memorandum in support of their motion to dismiss, Defendants point to several contextual references and allegations in Plaintiff's Complaint that Defendants argue fail to support the inference that Defendants participated in a four-party conspiracy. The structure of Defendants brief suggests that they would prefer this Court to analyze each allegation separately, considering in isolation allegations regarding the guilty pleas entered by Troy Stanley and KoSa, Dupont's participation in the Department of Justice Leniency Program, KoSa's lawsuit against Defendants, and other allegations. Defendants' invitation to "parse and dismember" the Amended Complaint, however, is "contrary to the Supreme Court's admonition that '[t]he character and effect of a [Sherman Act] conspiracy are not to be judged by dismembering it and viewing it as separate parts.'" *In re Se. Milk Antitrust Litig.*, 555 F. Supp. 2d at 943-44 (citing *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962), *superseded by statute on other grounds*, Pub. L. No. 97-290, 15 U.S.C. § 6(a)). "Nothing in *Twombly* . . . contemplates this 'dismemberment' approach to assessing the sufficiency of a complaint. Rather, a district court must consider a complaint in its entirety without isolating each allegation for individualized review." *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 373 (M.D. Pa. 2008). The Amended Complaint should be reviewed "*in toto.*" *Twombly*, 550

U.S. at 569 n. 14. As such, this Court will examine each allegation and reference in the context of the entire Complaint to determine whether Plaintiff's Complaint fully complies with the requirements articulated by the Supreme Court in *Twombly*.

### (1) The Arteva Guilty Plea

Milliken alleges that, in December 2002, Arteva Specialties, S.a.r.l. ("Arteva") – an entity not related to Celanese – pleaded guilty to the same conspiracy Milliken has alleged in the Amended Complaint. The Court may "take notice of the full contents" of guilty pleas. *Twombly*, 127 S. Ct. at 1973 n. 13; Fed. R. Evid. 201. Defendants argue, however, that nothing in the Arteva guilty plea agreements implicates Celanese. This Court disagrees with Defendants' assessment of whether the Arteva guilty plea makes Plaintiff's allegation of conspiracy more plausible.

Two cases from the Northern District of California provide this court with persuasive guidance on the relevance of guilty pleas proffered by non-defendants. In two cases involving the market for electronic memory (specifically the markets for Dynamic Random Access Memory ("DRAM") and the market for Static Random Access Memory ("SRAM")), *In re Flash Memory Antitrust (DRAM) Litig.,* 643 F. Supp. 2d 1133 (N.D. Cal. 2009) and *In re Static Random Access Memory (SRAM) Litig.,* 580 F. Supp. 2d 896 (N.D. Cal. 2008), the Northern District of California held that evidence of guilty pleas in markets not directly involved in the claims before them supported a reasonable inference of conspiratorial behavior in the markets in the cases before them. Acknowledging the general principle that "evidence concerning a prior conspiracy may be relevant and admissible to show the background and development of a current conspiracy" the court in *Flash Memory* stated:

Defendants ignore the above authority, and instead, focus on the fact that the employees who pleaded guilty to price fixing in the DRAM investigation worked for only two of the Defendant companies. While that may be so, the Court notes that the two companies involved, Samsung and Hynix, collectively controlled the majority of the flash memory market and together paid fines approaching half a billion dollars. In addition, at least seven of the employees involved are alleged to have had responsibility for NAND flash memory pricing, sales, marketing and operations in the United States. Given these employees' overlapping involvement in controlling DRAM and flash memory pricing, coupled with the significant market power wielded by their employers, it is reasonable to infer that their involvement in the DRAM conspiracy had at least some connection to the alleged conspiracy in this case.

643 F. Supp. 2d at 1149. Similarly, the court in *SRAM* held that guilty pleas in the *DRAM* litigation supported an inference of conspiracy in the SRAM industry: "Plaintiffs allege that the same actors associated with certain Defendants were responsible for marketing both SRAM and DRAM. Although the allegations are not sufficient to support Plaintiffs' claims standing on their own, they do support an inference of a conspiracy in the SRAM industry." 580 F. Supp. 2d at 903. *See also In re Air Cargo Shipping Services Antitrust Litig.,* MDL No. 1775, 2009 WL 3443405 at *1 (E.D.N.Y. Aug. 21, 2009) (unpublished) (reversing the magistrate judge's opinion and holding that "admissions of price-fixing by so many of the defendants certainly 'are suggestive enough to render a § 1 conspiracy claim plausible.'") (quoting *Twombly,* 550 U.S. at 556).

Thus, under certain factual circumstances, the "if there, then here" argument advanced by Plaintiff in the current case can have merit. This is particularly true where, as here, there is a significant overlap in identity of the alleged co-conspirators and where the claim is based on similar anti-competitive conduct. Regarding the validity of the "if there, then here" argument, it is clear that simply referencing a guilty plea in another conspiracy is not sufficient to support a

reasonable inference of conspiracy in the current case. For instance, in *Elevator Antitrust Litig.,* 502 F.3d 47, 52 (2nd Cir. 2007), the court found that plaintiffs had offered "an insufficient factual basis" for inferring a worldwide conspiracy based upon apparent (not proven) misconduct in Europe. 502 F.3d at 52. The court found that there was no evidence linking the conduct alleged to have occurred in Europe to the United States, in particular no indication that the two markets were even responsive to one another on price and "no allegations of the actual pricing of elevators or maintenance services in the United States or changes therein attributable to defendants' alleged misconduct." *Id.* The court did not hold that such a theory could never be viable–only that it hadn't been sufficiently alleged: "Without adequate allegation of facts linking transactions in Europe to transactions and effects here, plaintiffs' conclusory allegations do not 'nudge [their] claims across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

*In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 541 F. Supp. 2d 487, 492 (D. Conn. 2008), provides another example of an unsuccessful "if there, then here" argument. In *Parcel Tanker*, the plaintiffs attempted to introduce evidence of guilty pleas in a conspiracy to unlawfully raise prices on a different trade route as proof of a conspiracy to unlawfully lower prices. Due to significant factual differences between the conspiracies, the court found that the suggested inference did not enhance the plausibility of plaintiffs' claim: "in the context of a predatory pricing claim, 'a conspiracy to increase profits in one market does not tend to show a conspiracy to sustain losses in another.'" 541 F. Supp. 2d at 492 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 596 (1986)).

A similar example of an inference held to be too broad is provided by *In re Hawaiian &*

*Guamanian Cabotage Antitrust Litig.,* 647 F. Supp. 2d 1250 (W.D. Wash. 2009), where the Western District of Washington rejected plaintiffs' proffer of guilty pleas relating to conduct on an entirely different trade route by certain individuals, only one of whom was involved in the litigation before the court. The Court distinguished *SRAM*, noting: "The cases on which plaintiffs primarily rely do not support a different view because those cases involved defendants with overlapping involvement in different markets, a factual scenario that plaintiffs in this case have not pleaded." 647 F. Supp. 2d at 1259

The Court finds the current case more analogous to *SRAM* and distinguishable from the cases where the courts rejected the "if there, then here" argument. In the instant case and unlike *Elevator Antitrust Litigation*, Plaintiff is not reaching across the ocean based on unproven allegations regarding an unknown market. Rather, Plaintiff points to an admitted conspiracy that was close in time, geographic area, and involved several of the same entities. *See also In re Chocolate Confectionary Antitrust Litig.,* 602 F. Supp. 2d 538, 576-577 (M.D. Pa. 2009) (distinguishing *In re Elevator* and holding that "Defendants' alleged [anticompetitive] conduct in Canada enhances the plausibility of the alleged U.S. price-fixing conspiracy."). It is important to note that the Arteva guilty plea, standing alone, might not enhance the plausibility analysis. When viewed in context, however, the guilty plea does enhance the expectation that discovery might lead to evidence of an illegal agreement.

### (2) The Stanley Guilty Plea

Defendants next contend that the Troy Stanley guilty plea provides nothing in the way of

factual allegations that Celanese was involved in any anti-competitive conduct.[7] In that plea agreement, Stanley, an Arteva employee previously employed by Celanese, pleaded guilty only with respect to the time period he served as an employee of Arteva. As part of the plea, Troy Stanley pleaded guilty to antitrust violations involving PSF at least as early as September 1999. While the guilty plea, if offered alone, would be insufficient to support an inference of conspiracy extending back to late 1994 or early 1995, when examined in the context of Plaintiff's factual allegations the guilty plea provides at least some further plausible support for an inference of a conspiracy. *See In re Vitamins Litig.*, No. 99-misc-197-197, 2000 WL 1475705 at *11 (D.D.C. May 9, 2000) (rejecting the "notion that the guilty pleas and cooperation agreements and the class settlement foreclose a broader conspiracy. Guilty pleas are negotiated instruments which take into account not only the culpability of the accused but the Justice Department's resources and other cases requiring the government's attention."). As such, the Stanley guilty plea provides further contextual support for Plaintiff's Section 1 claim.

### (3) DuPont's DOJ Participation

Similarly, Defendants argue that the facts alleged by Milliken concerning DuPont and the Department of Justice are insufficient to supply the requisite specific factual allegations mandated in *Twombly*. Milliken alleges that, in 2001, DuPont "admitted to the DOJ participation" in the conspiracy alleged in the Amended complaint, and in exchange the "DOJ granted amnesty to DuPont from criminal charges under its Corporate Leniency Program." Am.

---

[7] Defendants contend that the Stanley guilty plea is silent as to any specific factual allegations and certainly contains no factual allegations implicating Celanese in any unlawful conduct – much less any participation by Celanese in a four-party conspiracy with Wellman, DuPont, and Nan Ya. As discussed above, such detailed factual allegations are not necessary.

Compl. ¶ 15(b). Defendants point to the lack of any details regarding the conspiracy to which Dupont allegedly admitted participation. Once again, however, Defendants narrow focus on one allegation in Plaintiff's Complaint misses the mark.

Government investigations and participation in amnesty participation program may not, standing alone, satisfy an antitrust plaintiff's pleading burden. Such evidence may, however, be used to bolster the plausibility of § 1 claim, as Plaintiff has done in the instant case. *See Starr,* 592 F.3d at 324-25 (finding that investigations by New York State Attorney General and DOJ Antitrust into defendants' price-fixing support plausibility of § 1 claim); *see also Hyland v. Homeservices of America, Inc.,* No.3:05-CV-612-R, 2007 WL 2407233, at *3 (W.D. Ky. Aug. 17, 2007) (unpublished) (finding that DOJ enforcement actions supported § 1 price-fixing allegations); *In re Tableware Antitrust Litig.,* 363 F. Supp. 2d 1203, 1205 (N.D. Cal.2005) ("A plaintiff may surely rely on governmental investigations, but must also . . . undertake his own reasonable inquiry and frame his complaint with allegations of his own design."). Accordingly, it is appropriate for Plaintiff to reference Dupont's participation in the Department of Justice Leniency Program to bolster the plausibility of its § 1 claim.

### (4) The Koch Complaint

Defendants next contend that Milliken cannot satisfy its pleading obligations under *Twombly* simply by incorporating by reference conclusory allegations asserted by a non-party in some other lawsuit. In its Amended Complaint, Milliken alleges that, on November 3, 2003, Koch, Arteva and their affiliates filed a civil action ("Koch Complaint") against Celanese, Hoechst AG and "various other Hoechst entities" alleging fraud in connection with the sale of Celanese's PSF business to KoSa in 1998, including the alleged fraudulent concealment from

Koch of Celanese's supposed participation in the conspiracy alleged in the Amended Complaint. *Id.* at ¶ 20. The issue need not be decided today because Plaintiff's Complaint states sufficient factual allegations to suggest a plausible conspiracy even without incorporating the Koch Complaint. Accordingly, this Court need not decide to what degree allegations in a separate action provide support for an inference of conspiracy in the current case.

**(5) Non-Class Plaintiffs' Opposition to Celanese's Summary Judgment Motion**

Finally, Defendants take issue with Milliken's allegations that the Non-Class Plaintiffs' Opposition to Celanese's motion for summary judgment in MDL 1516 ("NCP's Opposition") contains "additional details concerning various communications and meetings in furtherance of the Conspiracy, including evidence showing agreements among defendants and their co-conspirators from 1995 through 1998." Am. Compl. ¶ 50. Although Milliken acknowledges that NCP's Opposition was filed under seal in MDL 1516, Milliken seeks to incorporate by reference all of the evidence cited in that document as further support for the allegations of Conspiracy set forth in its Amended Complaint.

Defendants maintain that the Amended Complaint does not provide any reference to specific evidence contained in NCP's Opposition. Instead, Defendants maintain that Milliken is simply speculating as to alleged evidence proffered by the NCP's in opposition to Celanese's summary judgment motion. Defendant points out that Milliken could not properly access the contents of NCP's Opposition brief because it contains "Confidential and Lawyers Only Information" and was filed under seal pursuant to a Protective Order in MDL 1516. Prot. Ord. at ¶¶ 2(f), 3, 5. Defendants argue that Milliken's speculation as to the contents of the NCP's Opposition is plainly insufficient to satisfy the pleading requirements under *Twombly*. Once

again, because Plaintiff's Complaint pleads factual allegations sufficient to survive a motion to dismiss, this Court need not decide to what degree the NCP's Opposition brief provides additional support for an inference of conspiracy.

**D. Plaintiff's Complaint Sufficiently States a § 1 claim.**

Taken as true, as this Court must do on a motion to dismiss under Rule 12(b)(6), the facts pleaded in Plaintiff's Complaint are more than sufficient "to suggest that an agreement was made" that violates § 1 of the Sherman Act. Plaintiff's Complaint amply provides "enough fact to raise a reasonable expectation that discovery will reveal [more] evidence of an illegal agreement." *Twombly*, 550 U.S. at 556. Like all complaints, this Court must read the Complaint in its entirety, and must not "scrutinize each allegation in isolation but [must] assess all of the allegations holistically." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007). Viewed in its entirety, Plaintiff's Complaint contains enough factual content to plausibly suggest that Defendants participated in a conspiracy and that discovery will reveal evidence of an illegal agreement. The factual allegations pleaded in Plaintiff's Complaint are further bolstered by contextual references to another conspiracy in the PSF industry occurring in the same geographic region and around the same time period. Plaintiff's Complaint provides Defendant with more than fair notice of Plaintiff's claims and the grounds on which they are based, such that Defendant will know how to respond. "The present complaint succeeds where *Twombly*'s failed because the complaint alleges specific facts sufficient to plausibly suggest that the parallel conduct alleged was the result of an agreement . . . ." *Starr*, 592 F.3d at 323. Whether Plaintiff will ultimately prevail on its claim is a matter for another day. Accordingly, this Court finds that the facts alleged by Plaintiff are sufficient to give rise to "a plausible suggestion of

conspiracy." *Twombly*, 550 U.S. at 566.


### E. DEFENDANTS' MOTION TO STRIKE IS DENIED

Defendants next argue that this Court should strike the allegations in paragraphs 19 and 50 of the Amended Complaint, which refer to the summary judgment briefs and Order in MDL 1516. Plaintiff argues that motion should be denied, because Defendants have not met the requirements of Federal Rule 12(f) or demonstrated that the allegations they seek to strike are prejudicial. This Court agrees with Plaintiff and will **DENY** Defendants' Motion to Strike.

Federal Rule 12(f) provides that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." A motion to strike, however, is a "drastic remedy" that is generally "viewed with disfavor" and "granted only for egregious [pleading] violations." *Nixon v. Majors*, No. 3:07-cv-413-R, 2007 WL 4592277, *3 (W.D.N.C. Dec. 28, 2007) (citing *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001)) (unpublished); *Brown v. Ins. for Family Centered Servs., Inc.*, 394 F. Supp. 2d 724, 727 (M.D.N.C. 2005). In order to prevail on their motion, Defendants must demonstrate that the allegations at issue are both "prejudicial" to Defendants and covered or "envisioned" by Rule 12(f). *Brown*, 394 F. Supp. 2d at 727 (internal citations omitted); *Godfredson v. JCB Legal Group, P.C.*, 387 F. Supp. 2d 543, 556 (E.D.N.C. 2005) (internal citations omitted).

Defendants argue that the allegations at issue are "immaterial and inadmissible hearsay," and thus should be stricken. Defendants' argument assumes that Milliken plans to offer evidence

of the MDL 1516 summary judgment briefing and Order for some impermissible purpose. Plaintiff contends that it is premature to determine the admissibility of these allegations. Plaintiff argues that such evidence, under certain circumstances, might be relevant and admissible to show bias or to otherwise impeach a trial witness. At this point in time, this Court finds it improper to strike a portion of Plaintiff's amended complaint based on the argument that the portion of the complaint could later be used for some impermissible purpose. *See Buser v. S. Food Serv., Inc.*, 73 F. Supp. 2d 556, 559-60 (M.D.N.C. 1999) (denying motion to strike allegations relating to the parties' settlement negotiations because it was unclear at the early stage of litigation how the plaintiff intended to use any evidence related to the negotiations); *Bailey-P.V.S. Oxides, LLC v. S&K Packaging, Inc.*, No. 8-1596, 2009 WL 425605, *2 (W.D. Pa. Feb. 19, 2009) (unpublished) (holding that it was premature to strike allegations in a complaint just because they might be inadmissible at trial).

Moreover, Defendants have not shown that they have been or will be prejudiced by the allegations such that they should prevail on the motion to strike. *See Godfredson*, 387 F. Supp. 2d at 556. In *Godfredson*, the defendants sought to strike accusations in a complaint alleging they engaged in criminal activity. *Godfredson*, 387 F. Supp. 2d at 556. The court characterized the allegations at issue as "largely immaterial, impertinent, and scandalous." *Id.* Ultimately, however, the court denied the defendants' motion to strike, reasoning that because the allegations at issue were irrelevant and would not be presented to the jury or considered by the court, there was minimal danger of prejudice to the defendants. *Id.* at 557. Similarly, Defendants in the instant case fail to show how they might be prejudiced by the allegations at issue, other than vaguely citing to the potential for prejudice at some later date. Accordingly, because

Defendants cannot make the necessary showing of actual prejudice, this Court declines "to impose the drastic, disfavored remedy of striking the challenged allegations." *Chambers v. Cooney*, 535 F. Supp. 2d 1255, 1263 (S.D. Ala. 2008). Therefore, Defendants' Motion to Strike (Doc. # 36) is **DENIED.**

## CONCLUSION

**THEREFORE, IT IS HEREBY ORDERED** that:

(1) Defendants' Motion to Dismiss Plaintiff's Amended Complaint and Strike Certain Allegations in Plaintiff's Amended Complaint (Doc. # 36) is **DENIED.**


Signed: August 8, 2011

Richard L. Voorhees
United States District Judge